Perletto *v.* Lancaster Avenue Building and Loan Association, Appellant.

Submitted October 27, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*T. Henry Walnut,* for appellants.

*Frank W. Melvin,* for appellee.

OPINION BY RHODES, March 5, 1945:

This is an action in assumpsit by a withdrawn stockholder of defendant building and loan association. The case was tried by a judge of the municipal court, without a jury, who made a finding in favor of plaintiff for the amount claimed. See section 12 of the Act of July 12, 1913, P. L. 711, as amended by the Act of June 20, 1919, P. L. 515, §1, 17 PS §695. He also made certain special findings of fact. Judgment was entered against defendants from which they appealed.

In January, 1929, plaintiff subscribed for five double shares of installment stock in defendant association. Payments were made thereon until October, 1931, when he gave the association withdrawal notice; the stock at that time had a value of $241.88. The notice was accepted and approved by the association, at a regular meeting held on October 15, 1931, and acknowledged. The shares were marked withdrawn on the books and records of the association and placed on the withdrawal list. Upon the effective date of the withdrawal notice there were sixteen prior withdrawals, totaling $14,-231.59; that of plaintiff was the seventeenth on the list. In July, 1940, plaintiff brought this action in assumpsit to recover the sum of $176.82, with interest, the balance that he alleges was due him at that time after giving credit for dividends received by him from the association.

In plaintiff's statement of claim there were averments that defendant association was solvent as of the effective date of plaintiff's notice of withdrawal; that at the time, and subsequent thereto, the association and the liquidating trustees had funds available to pay plaintiff; that at the said time, and subsequent thereto, one-half of the funds in the treasury of the association and

in the hands of the liquidating trustees was sufficient to pay his claim in full and the claims of prior withdrawn stockholders; that the board of directors of defendant association had consented to the application of one-half the funds in the treasury to his demand. These allegations were denied in the affidavit of defense, and it was averred that defendant association was insolvent at that date. These were the main questions at issue. The trial judge specifically found that, at the time the notice of withdrawal was given, defendant association was solvent, and that for a period of thirty days after the notice of withdrawal was given, and for some time thereafter, there were sufficient funds in the treasury of the association not only to meet plaintiff's demand but the payments of prior withdrawn stockholders.

We regard the evidence sufficient to support the special findings of fact by the trial judge, and the general finding for plaintiff. See *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 656, 29 A. 2d 219; *Emerson C. Custis & Co. v. Tradesmens' Nat. Bank & Trust Co. et al.,* 155 Pa. Superior Ct. 282, 284, 38 A. 2d 409. Plaintiff concedes that the burden of proof was on him to show that funds legally applicable to the payment of his claim had come into defendant association's treasury since his withdrawal notice had become effective, and that his name was sufficiently high on the list to prevent exhaustion by payment to prior claimants, before his claim was reached, of the amount of cash he asserted was in the treasury available for withdrawal payments. *Meth v. Broad Street and Bonded Bldg. and Loan Ass'n,* 346 Pa. 331, 333, 30 A. 2d 119. It is argued rather vaguely on behalf of defendant association that it was insolvent as of the effective date of plaintiff's notice of withdrawal of his shares of stock. But there was ample evidence of solvency notwithstanding that the burden of proving actual insolvency of defendant association in November,

1931, was upon the defendants. *U. S. Bldg. & Loan Ass'n v. Silverman*, 85 Pa. 394, 396; *Benjamin Podol Bldg. & Loan Ass'n et al. v. Polak*, 102 Pa. Superior Ct. 36, 41, 156 A. 556; *Yonah Bldg. & Loan Ass'n Case*, 133 Pa. Superior Ct. 376, 384, 3 A. 2d 49. Of course, insolvency, actual or potential, is incompatible with the right to withdraw. *Acme Realty, Inc., v. Lafayette Bldg. & Loan Ass'n*, 134 Pa. Superior Ct. 384, 389, 4 A. 2d 240; *Stone v. Schiller Bldg. & Loan Ass'n et al.*, 302 Pa. 544, 552, 153 A. 758. The solvency of the association, as averred by plaintiff, was established by the reports rendered by defendant association to the Department of Banking in the years 1931, 1932, 1933, 1934, 1935, 1936. These reports clearly indicate that defendant association was solvent. The testimony of an examiner of the Department of Banking, who was called by defendants to testify to the condition of the association, indicated that the association was being profitably operated as of November 4, 1931. To the same effect is the annual statement for the year ending March 16, 1932.

In 1934, at the defendant association's own request, it was put on a restricted basis, and in 1936 it voluntarily determined upon liquidation, but there is no proof that it ever was insolvent. It is upon an unsigned letter dated January 29, 1932, from the Secretary of Banking to the president of defendant association, that reliance is now placed to establish insolvency. The letter warrants no inference of insolvency. We feel that the trial judge was justified in concluding that this letter was a precautionary measure taken as a result of the connection of some of the officials of defendant association with another association in which irregularities were alleged to have occurred, and that it was not written because of an insolvent condition of defendant association. Following both the letter of 1932 and the segregation order of 1934, defendant association made distribution to all shareholders prior to

the decision to liquidate. This action in itself was indicative of solvency rather than insolvency. Between 1934 and 1940 defendants made six distributions without distinction between shareholders who withdrew before or in 1931 and shareholders who had not withdrawn.

Plaintiff's averment that defendant association had sufficient funds legally available for the payment of shareholders who had withdrawn prior to plaintiff and for the payment to plaintiff himself was unquestionably established by the evidence. The sworn statements and reports show that the association had ample funds legally available to pay plaintiff and all prior withdrawals over a period of years. A five per cent dividend in 1934 and a similar dividend in 1935 made to nonwithdrawing as well as withdrawn shareholders was more than sufficient to pay withdrawn shareholders in full. This is admitted on the record. Likewise, after November 15, 1931, it is conceded that other withdrawals were paid, and large distributions made to nonwithdrawing shareholders.

This seems to be a case where defendant association and the liquidating trustees have proceeded to distribute the assets with entire disregard of the rights of withdrawn shareholders. Defendants' present position is attributable to their failure to recognize the fact that withdrawn shareholders occupy a position as "creditors" superior to nonwithdrawing shareholders, even where there is insolvency brought about by the latter's representatives in charge of the association. *Commuters Bldg. & Loan Ass'n Case*, 134 Pa. Superior Ct. 520, 523, 4 A. 2d 615. Plaintiff's superior right, in view of the fact that no evidence was presented to show that defendant association at any time was or is insolvent, is clear beyond doubt.

Plaintiff's notice of withdrawal was given to defendant association in October, 1931, and therefore the Act of May 15, 1933, P. L. 565, as amended, does not apply.

*Yonah Bldg. & Loan Ass'n Case,* supra, 133 Pa. Superior Ct. 376, 379, 3 A. 2d 49. See Act of April 29, 1874, P. L. 73, §37, cl. 2, 15 PS §991, and Act of April 10, 1879, P. L. 16, §2, 15 PS §992.

The remaining questions which have been raised in this appeal are entirely without merit. The question of jurisdiction had been previously raised and determined by the court. Thereafter, defendants accepted jurisdiction of the trial court. See Act of March 5, 1925, P. L. 23, §§1, 2, 12 PS §§672, 673. Finally defendants contend that plaintiff was bound by his action in executing a proxy authorizing the voting of his shares at the shareholders' meeting on liquidation. Plaintiff made an offer of proof that in 1936 he was induced to sign the proxy by a director and conveyancer of defendant association on the representation that it would not put plaintiff back as a shareholder, that it would not hurt his position, but would enable him to be paid all the money due as a withdrawn shareholder creditor. The offer of proof was refused, the party with whom plaintiff dealt having died in 1939. Even if such evidence was improperly excluded, plaintiff was not materially harmed as he was treated thereafter as though he had never signed the proxy and was paid dividends as a withdrawn shareholder creditor. Each dividend was not paid to plaintiff on the withdrawal value of his stock, but on the amounts as reduced from time to time by the successive dividends.

The judgment is affirmed, and execution is directed to be stayed until the court below is satisfied that such process would do no injury to creditors or other shareholders whose status is on an equality with plaintiff.